May it please the Court, Craig Anderson on behalf of the Police Department of Las Vegas Metropolitan Police Department and Officer Russell Craggan. I'd like to reserve two minutes for rebuttal. This is an appeal from the District Court's denial of Officer Craggan's request for qualified immunity. It's a case, it's a fact pattern we see occur a lot in the case law where a person is arrested on a facially valid warrant, but the warrant eventually, or the arrest eventually turns out to be mistaken. In this case, in the plaintiff's complaint, they allege that it was a Fourth Amendment violation for arrest and detention. We believe that on the merits, Officer Craggan should have been given summary judgment, and hence all the claims subsequently failed. Just on the issue of qualified immunity. Well, that's what we're here appealing. But you only get to qualify – well, under the Pierson-Callahan case, the Supreme Court has said you can address the issue of qualified immunity or the issue of the merits. We believe there was probable cause here to arrest based upon this warrant under Baker v. McCallan, which is a Supreme Court case, Hill v. California, which is a Supreme Court case, and in several circuit cases. We can only appeal the qualified immunity ruling to get to this point we are today. However, you can't exercise it. Well, right. Within the qualified immunity, you can take a look at the merits of the claim. Because, you know, here we have a warrant that identified the woman by name, birth date, height, eye color, hair color, gender. The only thing missing on the warrant was a Social Security number. They were different. And, you know, cases have said even when you're using an alias that appears on a warrant, it's okay to take that person in and have them checked out. And in, you know, Baker v. McCallan, probably the best case in the Ninth Circuit is Bingham v. Bingham. And in Bingham, he didn't have the same first name. It was for his brother who had the same address. And the warrant was from 1977, and the arrest was 19 – or the arrest was 1998. And because he had the same address and the same last name, heights differed, weights differed, birth dates differed, the Ninth Circuit still said, you know, that's clearly not unreasonable, and they didn't find it on qualified immunity. They found it on the merits and said there was probable cause to arrest. I guess your point here – I guess the problem here with the district court's ruling is it's hard to tell whether he asked or tried to determine whether a law was clearly established. Yeah. And that's what it was. So I guess your argument, and I don't mean to be making your argument for you, but if he – if a reasonably prudent officer were on top of the Ninth Circuit case law and was familiar with Bingham, you might think that what he's saying out there would be reasonable. Well, I would say if he's familiar with Baker v. McCallan, Hill v. California, in fact, there's not one case out there that says he's not reasonable. They have never, ever generated one. And what the lower – The differences are weight and Social Security number, correct? Weight and Social Security number. And weight is not – Is he of birth, same hair color, gender, all that? What the district court judge oral argument had an issue with is he goes, well, this is a really common name, Gonzales. And the response that I gave to him was, well, then what do you want these officers to do? And I think he said something like, maybe go get a pitcher. Well, this is a reasonable – I mean, at this point in the stop, to go back to the – you only have an hour under Nevada law to detain someone without arresting them under Nevada state law. So what makes sense is to take someone in and fingerprint them. And here she was taken in. She was fingerprinted. Now, she bailed out within 24 hours. But the fingerprints came back within I think it was a 30-hour period and exonerated her. Well, but there's another issue. But it doesn't have to deal with Craig out in the field. But there's another issue relating to what happened at the station. Not if you read Baker v. McCollin. I mean, she gets fingerprinted. And if you look at the Baker v. McCollin, which is a Supreme Court case. They knew it. But they knew at that time. I forget. Well, that's what there is. They knew at the time. The police knew at the time that the Social Security numbers didn't match up. Well, Craig knew that the Social Security numbers didn't match. They did something else. They ran a test. They ran something at the police station. And when you go to the jail, okay, this is the testimony. You do what's called a PID test. The officers wouldn't even call it fingerprinting. That determines whether you have ever been in that jail before, Clark County Detention Center. So it's limited to just that jail. Yes. And both the person in charge of it, Driscoll, and the person most familiar with the PID, who's a civilian employee, said, you know, we get false reads on these all the time. So they don't even save these results. They just try to determine. And even if it comes back to the person or not, you still go forward and do what's called an AFIS scan, which is a full hand scan, which is then run. And this is the way every jail does it in the country of big departments, because then you run it and it comes back. And, unfortunately, it takes a little bit longer. But they did not have any positive indicators that this was not the person. Now, again, it's weighing in her favor. But if you look at the Baker case, the claims there, and this is the Supreme Court, the person was transported and for three days sat in jail. They never looked at mug shots. They never fingerprinted him. Finally, they did it after three days. And what the Supreme Court said, if you're brought in on a mistaken arrest, three days being held is not unconstitutional. We don't know where that time limit is. And the Sixth Circuit has found it at 12 days. And, you know, I understand, you know, what you're laughing at. But that's what you're laughing at. I'm not laughing. I'm just, you know. It's what the Supreme Court says. That's three days. Okay. But now let's. Or 12. Or 12. Three and 12 right now if you take the Sixth Circuit. But one thing that's important here is, okay, so now if we're done with Officer Cragen because he's in jail, so now what we have is a Monell claim. Right. And the Monell claim is not before us. It's not, but you can exercise it. And it's not. Okay. It's not really before us. So I was going to say there's no evidence that this happens to other people making a custom practice or policy. You can deal with that in the district court. Okay. And so sticking then with Officer Cragen, I think it's. I have one problem with Officer Cragen aside from whether or not the stuff was appropriate and I want to ask about that too. But he didn't follow her into the station instead and he knew that it was the policy that unless he were there, there was no way she could be released even if they found, thinking of prints and so forth, that didn't correspond. So he didn't follow her. He just turned her over and knowing that the policy was that she couldn't be released unless he was there. So isn't there a question of fact as to whether that was reasonable? No. And I'm not sure that's the policy. That's what they say in their brief. But officers transport people, the probable cause, they transfer them all the time. There's no constitutional right to be transported to jail by the officer who arrested you. The probable cause was all that Officer Cragen needed. And I don't believe that's our policy. I know that's what it is said in their brief. But there's no constitutional right to have the officer that arrests you take you to jail as well. And then again, we're getting into a huge. Well, there's no constitutional right if the only way that she could be released was if he was there. Well, a constitutional right that the only way that she could be released if he was there? No, she was released with him not there. No, she was going to be held unless he was there. So wasn't she getting held contrary to her constitutional rights? Well, and she probably would have continued to be held even if he had dropped her off because he would have dropped her off and they would have fingerprinted her because he would not have learned any new information at the jail that he didn't already know without the fingerprinting. There would have been new information there when they took the fingerprints. She could have been released except he wasn't there. When they ran the PID, he would learn the information that there was no record of her being in that jail. But at that point, the policy is that they still undergo the live scan or the AFIS fingerprinting to get the whole hand. The PID is just one finger to determine whether you have been in the jail before. And so it would not be conclusive that she is not the person. Now, again, these facts are adding up in her favor, but it's not conclusive. And that's what the testimony of both Lieutenant Driscoll and the affidavit of Rick Henning said, is that she still would have been fingerprinted. And then did you also want me to address the actual stop? Yes. Okay. Thank you, Your Honor, because this was shocking to us. This was not pled in the complaint. If you look at the complaint, it's a Fourth Amendment claim for arrest in detention. A traffic stop is a seizure. They never made a claim for a seizure. In their written discovery, they never said that they were contesting the actual stop. The first time we learned that they were contesting this stop was in their response to our appellate brief. This is a claim that is being raised for the first time on appeal, which is wholly improper. The issue of the suspended tags, she admits that when she was pulled over, that one of the things Officer Craggan said to her was you have suspended tags. He has always maintained that is the only reason he pulled her over, was suspended tags. Now, the only evidence she has that her tags were not suspended is her own testimony. At this stage, we're done with discovery. We've done dispositive motions. She needs more than just her own self-serving opinion. Obviously, if her tags were not suspended, she would have produced EMB records. She would have produced a check. She would have shown something saying that these tags were not suspended. This is something they have done. He gave several reasons for why he stopped that kept changing. One, that she was gone through a yellow light, that then he was thinking she was drunk, and that there was an expired registration. He gave three separate reasons. Why isn't there a question of fact as to whether that stop was appropriate? Okay. That is her testimony. Okay. Her testimony was that he told her a yellow light, and then he said drunk driving, but he never did any filled sobriety or even pulled her out of the car for it. And then she says suspended tags. His testimony has always been it was just suspended tags. I'm required to look at it from her standpoint? Correct. Correct. And so my response to that, again, is this was an unpled claim. It's a claim that's being raised for the first time here on appeal. It's not even in their opposition to our motion for summary judgment. In fact, they say that our Fourth Amendment argument is off point. What the case is really about is the Fourteenth Amendment due process claim at the jail. That's what their opposition to our summary judgment says. They just ignore this Fourth Amendment warrant arrest and the stop altogether. So the stop was not even brought up until this stage of the litigation. So we had no knowledge of that. So we never even subpoenaed the DMV records. We never knew they were contesting the stop. And if you look at their complaint, it says it's a Fourth Amendment claim for arrest and detention. This is a seizure, what we're talking about now. And they have and so that would be my response to that, is that it's improper to address this stop at this point in the proceedings. Okay. Go ahead. Did you say at the outset of your argument that under Nevada law, you have to be released if you're not transported within an hour? Investigatory detentions. Okay. So if you have reasonable suspicion to stop someone, you have an hour to investigate that crime. All right. Okay. And then if an hour comes up and you don't have anything, you've got to let them go, or you arrest them. How much time elapsed here? Well, I think it was like 22 minutes or something like that from the time she was stopped. But she was arrested, so that would not. You know, she obviously was arrested. She said, come with me. I've got a warrant for your arrest. Yeah. He comes back and says, well, she's arrested. So that doesn't apply. Let's go. And, you know, and, Your Honor, the reason that I think they're bringing up the reasonable or the stop at this point is because they've read Bingham v. City of Manhattan, which it was an issue in that case where the arrest was found to be valid and the detention was valid. But the court said because there was an issue as to whether he was pulled over for drunk driving or his race, that was an issue for the jury. Those are subjective elements. Here, if her registration was current, she would have provided evidence of that, and she needs to at this stage in the litigation. So I think that the record is clear that she was pulled over for lack of registration. Thank you. Good morning, Your Honors. May it please the Court. My name is Charles Rainey. I'm here on behalf of the Plaintiff Appellee, Ms. Jessica Gonzalez. The appellants are asking this Court to rewrite existing appellate procedure in qualified immunity cases, stretching qualified immunity beyond its limits and effectively granting law enforcement a blank check to do whatever they want without meaningful judicial oversight. Overturning the district court's decision in this case will deny my client her day in court and deny our courts the ability to effectively adjudicate the facts in civil rights cases. So we understand that, but the Supreme Court has said that in a 1983 case where you're alleging a violation of a Federal constitutional right, officers can assert, quote, unquote, the defense of qualified immunity. Correct. And be granted relief. You know, they're removed from the case. And when the district court denies a motion for qualified immunity, they then have the right to pursue an interlocutory appeal. And the question before us is whether or not, as a matter of law, the district court should grant it qualified immunity. The operative word there is a phrase, as a matter of law. The district court's decision turned upon a disputed issue of material fact. And the case law is very clear on this. Is that what you're saying? So this gets a little technical, but when we're in the world of interlocutory appeals from a qualified immunity ruling, we, the petition, the appellant here, the city, basically has to say we'll take all the facts, we'll just take the plaintiff's story completely. Right. And, one, does it rise to a constitutional violation? Or, two, the law was not clearly established. It's actually, there's another threshold to this, Your Honor. If you look at, for instance, Jeffers v. Gomez, which was in this circuit, where they really better parsed out when you have specifically a disputed issue of material fact, what it is is the appellate jurisdiction is limited to analyzing the materiality of those facts in dispute. So the Court does not make a decision, A, whether the facts even were in dispute, B, the level of evidence required. It basically says, were those facts in dispute material to, and then you basically mentioned the lens in which we analyze that materiality, which is whether, one, did the plaintiff suffer a deprivation of some constitutionally protected right, and if she did suffer such a deprivation, then was the right clearly established. And so here, we have basically two parts to that question, right. First, the stop, and then, second, the arrest. Right. And as my opponent pointed out, the case of Bingham v. Manhattan Beach actually gives us a lot of very similar case that we can look at, especially now from the stop perspective. In that case, we have to ask you this. Did you allege in the complaint that the initial stop was without probable cause? We alleged in the complaint the facts surrounding the initial stop, as argued, but as also mentioned in my client's deposition. We also specifically mentioned a Section 1983 claim against the defendants, and we cited to the Fourth Amendment. But did you say, did you at all, I haven't looked at your, I don't, unfortunately, I don't have your complaint with me, but, right here on the bench, but did you allege that that stop was without probable cause? As I recall, Your Honor, the way we pled this out was we pled out a Fourth Amendment violation under Section 1983, and then we incorporated all of the prior facts. We did not say specifically the stop or specifically the arrest. Now, I could be wrong because I'm doing that from memory. So that would be something I would have to go back and look at myself. And I, unfortunately, have all these books underneath me, but not the complaint. If you look at the district court's ruling, did he view this as a Fourth Amendment stop, as a challenge to the stop, or did he look at it as whether or not they were entitled to qualified immunity? The officer, Cragen, was entitled to qualified immunity for taking her into custody. If you look at the transcript, the decision, the decision was basically was this reasonable. The judge didn't say specifically was this reasonable or that reasonable. He did make, well, he did make specific mention in one section about the reasonability of the arrest and whether or not the officer should have taken time to investigate the validity of the warrant. And that's something I really do want to have a moment to speak about at some point. But as far as the stop goes, he didn't specifically mention the stop, but he mentioned repeatedly was the officer's conduct reasonable under the circumstances. And so now the – I need to parse out, though, the interpretation of Bingham v. City, he was actually arrested for driving under an invalid driver's license. And the argument was that he was held for some time to investigate the validity of the underlying 1977 warrant. But he was never actually arrested for that in the Bingham case. So the district court in that case held that qualified immunity did apply. And so what happened was there was a cross appeal on that case, where basically they said there was no qualified immunity for the stop, but there was qualified immunity for the rest, is what the district court said in that case. Here the district court said there was no qualified immunity, period. And now in addition to that, if we look at the reasonability of the circumstances here, there is definitely a sort of callous disregard for whether or not this is the right person under the warrant. And as we start looking at these two incredibly divergent accounts between the two positions, between what Mrs. – what Ms. Gonzales says and between what Officer Cragen says, you get this very stark contrast of a picture, where in one we have an officer who is – appears deliberately to wish to inflict emotional distress upon the client – upon the plaintiff. He wants to make her – sort of put her through this torturous situation. He's grabbing her phone from her. He's telling her they're going to send her kids to child haven. They're doing all these sorts of things. And at no point even engaging in any sort of investigation as to whether or not this warrant is valid or not, despite the fact that it's almost three years old and has a different social security number and a different address and has – doesn't have any of the markings. Meanwhile, at the same time, too, my client's producing a brand-new driver's license that she got within the last month or so, which, if she had done that at that same time, there's a question of fact, too, whether or not the DMV would have even issued her that driver's license had she been warranted under a warrant. So there were definitely distinct facts. Breyer. Let me ask you this. Did he take her into custody? Actually, what he did was he arrested her, and then he said, well, my shift's over, and he handed her off to another officer. But why did he take her into custody? You mean at the moment that he put her in the car, you mean? Yeah. What did he tell her? My understanding is, if I remember her deposition correctly, she didn't know initially, but eventually he told her that you're warranted under a warrant and you're going to jail. It didn't say what the warrant was for. It just said you're going to jail. And then what he did was he – I have a warrant. You're under arrest. I don't have the exact wording from what my client presented in the deposition. I do remember there was a question as to whether or not he read her rights or anything of that nature. But as far as I know, he basically brought her into custody and basically told her, you're under arrest. There was definitely an exchange between them as far as her saying, I'm not the person, I'm not wanted under this warrant. And he said, according to her deposition testimony, he said, I know you're kind. You're all liars. And, you know, you basically, you know, just stay back there and you're going to jail. Under his testimony, of course, he was very sympathetic and he was very understanding of the situation. But so – and in fact, actually, if you read his deposition, it reads almost like a policy procedures manual for the Las Vegas Metropolitan Police Department. It's just, I did this, this, this, this, and this, and I followed the procedure precisely. Now, the – What are the questions of fact that would preclude the granting of qualified immunity? The question, Your Honor, is, was the officer acting reasonably under the circumstances? Given the totality of the circumstances on the ground at that time with her contesting her, her, you know, protesting and saying, I'm not the person, her driving her two children to school at the time, you know, the fact that there were multiple people who I believe, at least one person who came to the scene to pick up the children who knew her and they knew that she wasn't wanted under this warrant, the fact that the Social Security numbers didn't match, you know. And as you go on, every hour of her detention becomes more and more sort of shocking. Now, I mean, by the time she gets to the jail and she puts her fingers down on that personal identification device and they're saying, oh, you've never been here before, and, you know, that's within about two or three hours of her detention. And at that point, of course, it should have stopped, right? At that point, they should have completely taken her away. And Officer Cragen should have been there to say, okay, this has got to stop now. But he wasn't there. They basically then proceeded to do this sort of, you know, phishing expedition. I think the concept of live scan and that they're admitting that that's their policy. We're really just talking about Officer Cragen's entitlement to qualified immunity. We're not getting into the merits of whether the county should enlist that or the others. That's not part of this appeal. This appeal is with regard to Officer Cragen and what questions of fact were involved there. Yes, Your Honor. And then I go back to the question. It's the level of reasonability that he exercised at that time. And that was exactly what the district judge said. And I can actually, if I can quote here, I have the, he said, as the lower court noted, he basically said, he kept citing the reasonability. He said, quote, he might need to investigate further. You're going to have to sit down, Ms. Gonzalez and the cruiser here, and I'm going to have to do this or that or the other thing. Send me a picture. Do something. Get me some more information on this. I want to be sure I've got the right Jessica Gonzalez. And that's from pages 8 through 9. Was it objectively reasonable or was it not? And I think reasonable minds can differ on that. And so, and that's on page 10. But what's happening here, too, is the fact that her name is Jessica Gonzalez should be something that the officer entertains as well. We're talking about, I think we did a search and it was several thousand Jessica Gonzalez's just in Las Vegas. And, in fact, Jessica Alyssa Gonzalez, that's what they're named. For whatever reason, that name is ridiculously common. And he didn't even know that they had the same middle name. But Jessica E. Gonzalez is what they had. And basically there are thousands of them just in Las Vegas. If you incorporate the 50 million visitors to Las Vegas every year, then you're talking about tens of thousands of people by that name. In addition to that, the person who was originally wanted under the warrant was from California. Let me ask you this. Do you think that if, just ask this hypothetically, that if an officer in this situation had been familiar with, assuming an officer were familiar with Bingham and Hill and a couple of other cases, that he would have thought that taking her into custody would have been a violation of her constitutional rights? I think so, Your Honor, because Bingham, again, Bingham did not arrest pursuant to that warrant. What he did was he investigated the validity of that warrant and arrested the person on driving with a suspended driver or expired, I'm sorry, expired driver's license. The license had been expired for like a year. And that's what he arrested the individual for in Bingham. And so I think that if you're reading that case, it doesn't say that it's okay to arrest when the warrant is unclear. It says that you can hold that person for a little while and try to find out if the warrant's clear. Once you figure it out, you've got to let them go. And why I'm also bringing in the procedures here is because of the fact that it just stands to reason that if you're the officer there and you're subject to these procedures and you know that there's no way to get this person out of there without me being there and this person's contesting, saying they're innocent, and at the same time I've got all of these facts starting to stack up against her, against this being the person, I should have stayed with her. I should have walked with her. Or at least said to Officer Hunt, as I'm handing her off, you need to stay with her and we need to make sure that someone can stop this process if it turns out she's not the right person. Instead, he just said, end of my shift. I'm done. Here she goes. And he didn't – so he didn't take the proper precaution. Now, they mentioned that whether or not that is the procedure of CCDC. Under oath, the PMK for CCDC, the Clark County Detention Center, said that is their policy, that the only person who can stop this is the arresting officer. And that was what the person most knowledgeable said for the Clark County Detention Center under oath in his deposition. Okay. Thank you. Thank you, Your Honor. Briefly, Your Honor, just to answer a few of your questions. Let me – I have the complaint. And they say they incorporated these facts, that at approximately 6.45 a.m., Officer Cragen pulled over the plaintiff's car at or near the intersection of Paradise Road and Swenson in the county of Clark County, Nevada. And Officer Cragen examined the plaintiff's driver's license, which displayed the plaintiff's full name, date of birth, driver's license number, address, and driver's license date of issue. They examined her Social Security card, which displayed the plaintiff's name and Social Security number. Officer Cragen placed the plaintiff under arrest, claiming the plaintiff was wanted on an outstanding bench warrant. Nothing about to stop. In their answer to interrogatories, we asked for all of their Fourth Amendment claims. One, the plaintiff was arrested under a bench warrant intended for another person. The plaintiff gave ample evidence to demonstrate she was not the person wanted under the bench warrant. Three, the arresting officer and all other officers and persons involved in her arrest continued to take action to further the plaintiff's arrest and detainment. Stop was never brought up until this, because they read City of Bingham. So they're like, okay, well, let's do that. Now, City of Bingham, when you ask what a reasonable officer would have known, City of Bingham helps my case immensely. That Mr. Bingham was not even arrested under the warrant. He was arrested for a misdemeanor that he could not be arrested for. The court then helped out the officer by saying, well, you could have brought her in on this warrant. And so we're going to give you that. And so that case, they have not given you one case, not one, not from another circuit, a State court, anywhere, that would have in any way informed Officer Craggan that it was patently unreasonable or, as the Supreme Court said in Malley v. Briggs, knowingly or patently violated the law because he's so incompetent that he's the only officer that would have made this decision. They have not given you one case that even suggests that. And if they say Bingham supports their case, it helps my case immensely. So with respect to the issue of the stop, never brought up until now. With respect to the arrest, there's no clearly established law. And finally, I would encourage you to exercise pendant jurisdiction over the ‑‑ because, let me tell you why. They never planned ‑‑ it's a due process violation which they're alleging against the jail. They never even mentioned the Fourteenth Amendment in their complaint. The district court refused to address that, but it's not even a claim in this case. They never even mentioned the Fourteenth Amendment. So the due process claim, I would just encourage you to exercise your pendant jurisdiction. Thank you. Roberts. Thank you all very much for your arguments this morning. We appreciate your time and energy. And the matter is now submitted and will be in recess for today. Thank you. All rise.
judges: Watson, Hug, Paez